UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
KIM M. MARTIN,

        Plaintiff,

vs.                                       **COMPLAINT**

COUNTY OF SULLIVAN,

        Defendant.
------------------------------------------------------x

    KIM M. MARTIN, by and through her counsel, Michael H. Sussman, hereby sues the County of Sullivan, for retaliation its agents have visited upon her for protected speech acts:

## PARTIES

1. Plaintiff, Kim M. Martin, is a female of legal age who resides in the County of Sullivan.

2. The County of Sullivan is a municipal defendant which may sue and be sued.

## JURISDICTION

3. As plaintiff alleges that defendant, by policy, practice and custom, engaged in retaliation against her contrary to the dictates of the First Amendment to the United States Constitution, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4), 42 U.S.C. secs. 1983 and 1988.

## FACTUAL ALLEGATIONS

4. Plaintiff commenced working for the County of Sullivan on August 19, 2002 as a data entry clerk in the Data Entry unit of the Department of Social Services in

1

Liberty, New York.

5. Eight months later, plaintiff was promoted to Social Welfare Examiner.

6. In 2007, plaintiff was promoted to the civil service position of Senior Social Welfare Examiner, which is a mid-level supervisory position.

7. Plaintiff continues to hold this title.

8. At all times relevant hereto, plaintiff performed her job functions in a satisfactory manner.

8. As of June 2012, plaintiff was responsible for supervising primarily new or probationary examiners, who she was also required to train.

9. In discharging her responsibilities, she taught new employees how to determine eligibility for food stamps and public assistance and reviewed their work product to insure they were properly applying her instruction and the relevant rules and guidelines.

10. Plaintiff was also employment coordinator and responsible for reviewing all employment records of clients to insure that the agency was properly recording and coding job searches by benefit recipients.

11. Each County in New York State was required to insure that DSS beneficiary recipients sought employment and to keep accurate records of such employment searches and the results thereof, as well as the work histories of these recipients.

12. In reviewing records relating to these objectives, plaintiff conducted random audits on her own, prompted by discrepancies which she noticed while reviewing coding records.

13. During the course of doing these audits, which were outside her function and

arguably within the ambit of the agency's fraud unit, plaintiff found many irregularities, including a safety net case which was established much faster than the norm and not signed off on by proper supervisory authority and another case in which, for two years, plaintiff's direct supervisor approved benefits, though one of the beneficiaries was already a beneficiary on another established case and the supervisor had a personal friendship with the father of the beneficiary who also worked as a Peace Officer at DSS.

14. Having discovered these discrepancies, plaintiff reported to Kevin Bennett, the head social worker examiner, who told her that he understood the issue, but that those involved would only get a slap on their hands.

15. Dissatisfied with this response, plaintiff reported her complaints on line to the State of New York Inspector General and also reported her findings of fraud to a new County legislator, Cindy Geiger.

16. After making these reports, which were outside the scope of her official duties and prompted by her concern as a citizen for the agency's engagement in fraudulent conduct, plaintiff was gradually deprived of some of her job duties, including the training and supervision functions set forth in paragraphs 8-9 above.

17. Plaintiff received no explanation for the reductions in her job duties.

18. Plaintiff was also threatened at the work place by one of those arrested as a consequence of her reporting.

19. Plaintiff filed a hostile work environment complaint because her co-workers were threatening her with physical harm.

20. However, by the summer 2013, the county, through its own personnel officer, determined that plaintiff was to blame for the hostile work environment she was experiencing and that her colleagues were not responsible for any criminal conduct.

21. On July 25, 2013, plaintiff later received a "corrected" report which continued to claim that she was responsible for the hostile work environment.

22. In August 2013, the Personnel Office claimed that the hostility directed at plaintiff was caused by her own actions, a reference to her protected activity as a citizen in revealing fraud.

23. During the summer of 2013, plaintiff's co-workers approached plaintiff, taunted her, told her that she had nowhere to turn with her complaints and threatened directly, in one instance, to kick her ass.

24. During the same time period, Rhonda Roach threatened physical violence against plaintiff.

25. During the course of the county's own investigations, the county's personnel officer told plaintiff to take some time off, calm down and people will forget, but this did not happen.

26. Eventually, in 2013, the State IG's office and state police did conduct an investigation into plaintiff's complaints and, by November 2013, charged three staff with crimes arising from their abuse of the system.

27. After these staff members were charged, co-workers would not speak with plaintiff and the work environment become even more toxic and hostile.

28. By April 2014, plaintiff's supervisors stripped her of her supervisory duties

and she faced hostility from other supervisors and Bennett.

29. These supervisors followed plaintiff and made hostile remarks to her; plaintiff reported this to Commissioner Parker, Deputy Commissioner David Sager and other high ranking agency officials.

30. However, no effectual response to the persecution being visited upon plaintiff occurred and plaintiff's supervisor, Bennett, continued in his hostility toward her.

31. In April 2014, plaintiff was moved to the Legal Department where she retained her supervisory title but worked in secretarial functions.

32. This continued until August 2014 when the managing attorney, Christine Cahill, became disabled and plaintiff asked to return to her prior position.

33. Plaintiff made this request because she felt that Cahill was confiding confidential information to her and she did not want to receive this anymore.

34. In August 2014, plaintiff's desk was transferred to the rear of the TA Department, but she was not tasked with any duties relating to DSS.

35. Having been moved, plaintiff also did not have a supervisor.

36. In January 2015, plaintiff was transferred to another building after cardboard cut-outs of rats were placed in her work station in November and December 2014.

37. Plaintiff reported these rats to the Public Safety Officer who called the Sheriff's Department which promised to do an investigation.

38. In January 2015, plaintiff was moved to the Accounting unit where she continued to have no functions.

39. On April 29, 2015, plaintiff received new employment duties including reviewing cases under a supervisor with whom plaintiff had a notoriously poor

5

relationship.

40. Since plaintiff reported fraud, as set forth above, defendant County's entire objective has been to move plaintiff from a supervisory position to one in which had no access to detect or report fraud.

41. This course of action has deprived plaintiff of the right to do her job or pursue her career.

42. Plaintiff has been made to feel depression, uselessness and anxiety as a direct consequence of defendant's retaliatory conduct which has deprived her of the opportunity to pursue her job functions and/or advance in her career.

43. Defendant County has implemented this retaliatory policy through personnel authorized by the County to make personnel decisions and these decisions have reflected a policy, practice and custom of the County to terminate or otherwise retaliate against those who have revealed misconduct or fraud at DSS.

44. The same policy, practice and custom of punishing employees who brought to light fraud, waste and/or abuse cost former DSS Deputy Commissioner David Sager his position during the same county administration.

45. Said policy, practice and custom has been adopted by the County of Sullivan, through its County Manager and the former DSS Commissioner, Randy Parker, both of whom acted as agents of the defendant County in setting and enforcing administrative policy, practice and custom.

46. Said policy, practice and custom has substantially chilled plaintiff in her expression of protected speech and her revelation of county misconduct.

## **CAUSES OF ACTION**

47. Plaintiff incorporates paras. 1-46 as if fully set forth herein.

48. By and through the acts and omissions set forth above in implementation of its policy, practice and custom of punishing and retaliating against whistleblowers, defendant County violated plaintiff's right to be free of retaliation in violation of the First Amendment to the United States Constitution as made actionable against it pursuant to 42 U.S.C. section 1983.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court accept jurisdiction in this matter, convene a jury to hear and decide this matter, award to plaintiff compensatory damages in the sum of $750,000, award to plaintiff reasonably incurred attorneys fees and costs and any other equitable relief which the facts and law require.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO BOX 1005
1 RAILROAD AVENUE, SUITE 3
GOSHEN, NEW YORK 10924
(845)-294-3991